IIN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| K.P., the Student, by and through his Parent, S.K.,<br><br>Plaintiffs,<br><br>vs.<br><br>DEPARTMENT OF EDUCATION, STATE OF HAWAIʻI, and KEITH HAYASHI, Superintendent of the Hawaiʻi Public Schools,<br><br>Defendants. | Case No. 22-cv-00267-DKW-WRP<br><br>**ORDER AFFIRMING THE MAY 13, 2022 DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER** |

Pursuant to the Individuals with Disabilities Education Act ("IDEA"), Plaintiffs—a seven-year-old student (K.P.) and his mother (S.K.)—appeal the administrative hearings officer's ("AHO") May 13, 2022 Findings of Fact, Conclusions of Law and Decision (the "Decision"). In the Decision, the AHO found that the Hawaiʻi Department of Education ("HIDOE") had denied K.P. a Free Appropriate Public Education ("FAPE") and awarded reimbursement for K.P.'s private school tuition as a remedy. The AHO, however, reduced that reimbursement by 25% because S.K. had not "diligently and genuinely" participated in the formulation of K.P.'s Individualized Education Program ("IEP").

1

Plaintiffs now appeal the AHO's 84-page Decision, limited to the issue of the reduction in tuition reimbursement, on the grounds that the AHO did not make a finding that S.K.'s actions *caused* the denial of FAPE.  However, as explained more fully below, no such nexus was required in order for the AHO to reduce the reimbursement amount.  *See C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 635 F.3d 1155, 1159 (9th Cir. 2011) (holding that, when a guardian unilaterally places a child in private school, a court must "exercise it's 'broad discretion' and weigh 'equitable considerations' to determine whether, and how much, reimbursement is appropriate") (quoting *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993)); 20 U.S.C. § 1412(a)(10)(c)(iii)(III) (specifically permitting reduction of private school tuition reimbursement "upon a judicial finding of unreasonableness with respect to actions taken by the parents").  Although a nexus between the parent's conduct and the denial of FAPE may be a factor relevant to the AHO's analysis, it is not dispositive.  The AHO's Decision is AFFIRMED.

## STANDARD OF REVIEW

The IDEA requires that states receiving federal education funding provide every disabled child with a FAPE.  20 U.S.C. § 1412(a)(1).  A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child . . . ."  *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist.,*

2

*Westchester Cnty. v. Rowley*, 458 U.S. 176, 188–89 (1982). While a FAPE does not guarantee the "absolutely best of potential-maximizing education," *J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 439 (9th Cir. 2010) (citation omitted), it does require the provision of services "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017).[1]

The principal mechanism by which school districts provide a FAPE is the IEP. *Id.* An IEP review team meets annually to evaluate a student's current progress and then sets out measurable goals and a detailed plan for the upcoming school year in a written IEP. 20 U.S.C. §§ 1401(9), (14); 1414(d).

If an IDEA beneficiary believes her school district is not meeting its obligation to provide a FAPE, she can file a due process complaint for resolution by an AHO. *Id.* § 1415(b)(6), (f)(1)(A). Then, if the recipient disagrees with the AHO's decision, she may "bring a civil action with respect to the complaint presented . . . in a district court of the United States . . . ." *See* 20 U.S.C. § 1415(i)(2)(A). A reviewing district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant

---

[1] HIDOE receives federal education funding under the IDEA. Dkt. No. 1 ¶ 9. Thus, schools within the HIDOE must provide every qualifying disabled child with a FAPE.

relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C). Although questions of law are reviewed *de novo, Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 887–88 (9th Cir. 2001), the court must give "due weight" to the AHO's factual findings and must not "substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]." *Hendrick Hudson*, 458 U.S. at 206. Such deference increases when the AHO's findings and decision are thorough and careful and demonstrate "sensitivity to the complexity of the issues presented." *J.W.*, 626 F.3d at 438–39 (citation omitted). The party challenging an administrative decision bears the burden of proof. H.A.R. § 8-60-66(a)(2)(B); *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007).

## **RELEVANT BACKGROUND**

K.P. is a seven-year-old child who is eligible for special education and related services under the IDEA. Decision at 8 ¶ 2, Dkt. No. 11-38. During the 2019–2020 school year, K.P. attended the Pono Academy & Center ("PAC").[2] *Id.* On July 15, 2020, S.K. filed a due process complaint with HIDOE regarding the then upcoming 2020–2021 school year, claiming that the HIDOE had denied K.P. a FAPE by failing to provide an up-to-date IEP for K.P. prior to that school year.

---

[2]During the 2019–2020 school year, PAC was a non-profit pilot program that used funding from private donors to determine the costs of running a private school for children with special needs. Dkt. No. 13-5 at 16–17 ¶ 58. Beginning with the 2020–2021 school year, PAC became a for-profit private school. *Id.* at 17 ¶ 59.

S.K. simultaneously re-enrolled K.P. in PAC for the 2020–2021 school year and sought reimbursement for K.P.'s PAC tuition as a remedy for the denial of FAPE. Decision at 47 ¶¶ 132–134; Dkt. No. 13-5 at 36.

On December 11, 2020, an AHO agreed with S.K. that HIDOE had denied K.P. a FAPE for the 2020–2021 school year by failing to produce an up-to-date IEP. Dkt. No. 13-5 at 36. The AHO also found that K.P.'s private placement at PAC was appropriate and that equitable factors supported full tuition reimbursement for the 2020–2021 school year in the amount of up to $224,309.80. *Id.* at 44–45.

The December 11, 2020 order also directed HIDOE to hold a new IEP meeting for K.P. to apply to the 2021–2022 school year within 60 days, and ordered S.K. and PAC to cooperate with HIDOE to facilitate the meeting. *Id.* Among other things, S.K. was required to (i) sign several consent forms and (ii) enroll K.P. in his "home" public school, Kahului Elementary School. *Id.* These steps would allow the HIDOE to access necessary information about K.P. to be used in the development of his educational planning and programming. The order instructed that "[a]ny delays in the provision of consents, scheduling, or any other delays in the development of [K.P's] IEP caused by [S.K.], [PAC], and/or their representatives shall be carefully documented by [Kahului Elementary] and shall

extend the sixty (60) day deadline set herein by the number of days attributable to [S.K.], [PAC], and/or their representatives' actions." *Id.* at 44.

In the subsequent months, S.K. did not comply with the AHO's order to cooperate with HIDOE and facilitate the IEP meeting.[3] As one example, she failed to provide certain consent forms until February 12, 2021, despite receiving the HIDOE's initial request and follow-up reminders on January 14, 2021, January 19, 2021, February 2, 2021, February 8, 2021, and February 11, 2021. As another example, she did not enroll K.P. in Kahului Elementary, despite receiving reminders to do so on January 14, 2021, January 19, 2021, February 2, 2021, February 8, 2021, February 11, 2021, February 19, 2021, and March 5, 2021. These failures caused delays in the initial scheduling of the IEP meeting beyond the initial 60-day target. Even after the IEP meeting was finally scheduled, S.K. repeatedly and with little notice requested that the meeting be postponed—either claiming she was unexpectedly unavailable or that she needed more time to prepare. And when the meeting was finally rescheduled for June 21, 2021, S.K. ultimately declined to attend the IEP meeting at all, consenting to the meeting proceeding without her. In fact, that very day, S.K. met with the PAC director to sign a contract for K.P.'s private school enrollment for the 2021–2022 school year,

---

[3]The Decision provides more detail regarding the many ways S.K. thwarted the IEP process. *See* Decision at 12–33, ¶¶ 21–87.

6

indicating her intention to send K.P. to PAC, regardless of the IEP process. Moreover, after the first day of the IEP meeting took place on June 21, 2021, S.K. was informed that the meeting was still ongoing and would re-convene on June 23, 2021, but she again chose not to participate and consented to the continued meeting without her participation.

On June 3, 2021, S.K. filed another due process complaint regarding the 2021–2022 school year's IEP. *See* Dkt. No. 11-11. This complaint, which was later amended on September 8, 2021, asserted nine claims against the HIDOE regarding the 2021–2022 school year, including, as relevant: (1) that the HIDOE's holding of the June 21–23, 2021 IEP meeting without parental involvement constituted a denial of FAPE; and (2) that the IEP denied a FAPE by specifying that K.P. was to receive a certain entitlement only according to "availab[ility]." Dkt. No. 11-11 at 5–6. S.K. also requested reimbursement for K.P.'s tuition at PAC for the 2021–2022 school year. *Id.*

The AHO conducted due process hearings on January 11, 2022, February 15–18, 2022, and February 28, 2022, and issued her Decision on May 13, 2022. Dkt. No. 11-38 ("Decision"). The AHO found that one of S.K.'s claims was valid: HIDOE had failed to provide K.P. with a FAPE by conditioning an entitlement on "availab[ility]." *Id.* at 61. The AHO also decided that K.P.'s enrollment at PAC was appropriate and awarded reimbursement for that program. *Id.* at 76–78.

However, the AHO found that equitable factors, including S.K.'s conduct during IEP development, justified a reduction in the monetary award by 25%:

> Parent's unreasonable conduct justifies a reduction in the capped amount. On January 14, 2021, SSC asked Parent to sign Consent for Release of Information forms and to enroll Student at Current Public School, both of which would allow Current Public School to obtain information to use in formulating Student's IEP. Findings of Fact "FOF" ¶ 22. Although Parent signed a consent form, Parent sent SSC an unusable picture of the signed consent form instead of giving it to the IEP team when they met for an SST meeting on February 2, 2021. FOF ¶¶ 24–25. On February 12, 2021, Parent emailed SSC a copy of an executed consent form but did not enroll Student at Current Public School. FOF ¶ 34. On February 19, 2021, SSC had to follow up with Parent about enrolling Student at Current Public School and submitting the signed consent forms. FOF ¶ 38. On March 5, 2021, Parent still had not enrolled Student. FOF ¶ 51. On March 18, 2021, SSC again emailed Parent a Consent for Release of Information form to allow Current Public School to request information from Student's doctors. FOF ¶ 55. By April 13, 2021, the school was still unable to get usable consent forms from Parent to request information from Student's doctors. FOF ¶ 68.
>
> Although Parent participated in two SST meetings (February 2, 2021 and February 24, 2021) and two eligibility meetings (April 12, 2021 and May 6, 2021), Parent did not participate in any IEP meetings where the actual IEP was to be formulated for Student. FOF ¶¶ 25, 41, 66, 73, 87, 92. On the day of the IEP meeting, May 21, 2021, Parent canceled and asked to reschedule the IEP meeting because she wanted more time to review the draft IEP and email SSC what she believed needed to be adjusted. FOF ¶ 79. The May 21, 2021 IEP was canceled, but Parent did not send an email stating her concerns about the draft IEP like she said she would. She did not respond to SSC's emails (on May 26, 2021 and June 1, 2021) asking for her thoughts and suggestions on the draft IEP. FOF ¶¶ 81, 83. Instead of speaking with SSC, or emailing SSC about how the draft IEP should be adjusted, or re-scheduling the IEP meeting, Parent filed a Complaint on June 3, 2021. FOF ¶ 84. Although Parent received a letter from Principal on June 8, 2021 and a Conference

> Announcement on June 8 and 15, 2021, stating that an IEP meeting will be scheduled for June 21, 2021, there is no evidence that Parent responded. FOF ¶¶ 85–86. Lastly, instead of attending the IEP meeting on June 21, 2021, Parent met with [the] Director [of PAC] and signed the 6/21/2021-Contract. FOF ¶ 138. Parent made no attempt to participate in the formulation of Student's IEP prior to signing a contract that would obligate either her or DOE to pay Private School almost a quarter of a million dollars. Based on Parent's conduct, the reimbursement or payment shall be reduced by twenty-five percent (25%). . . .
>
> [HIDOE] denied Student a FAPE when it offered an IEP that conditioned RBT services on availability. Student is entitled to have his private placement funded by DOE; however, a reduction in funding is warranted because the tuition and fees charged by Private School are excessive and Parent did not diligently and genuinely try to participate in the IEP formulation process.

*Id.* at 78–82.

On June 10, 2022, S.K. appealed the AHO's Decision to reduce the reimbursement amount by filing the instant Complaint in this Court. Dkt. No. 1. HIDOE answered on August 25, 2022. Dkt. No. 8. On September 30, 2022, the administrative record was transmitted to this Court. Dkt. Nos. 10–22. S.K. filed her Opening Brief on February 3, 2023, Dkt. No. 28, contending that the AHO's Decision was improper because there was no causal connection between S.K.'s behavior and the State's denial of FAPE. HIDOE filed its Answering Brief on March 17, 2023, Dkt. No. 29. There was no reply. The Court elected to decide the issues presented in this appeal without a hearing, *see* Dkt. No. 31, and this Order follows.

9

## DISCUSSION

Upon finding a denial of FAPE by a public school system, an AHO has the authority to determine whether public funding should be used to reimburse tuition paid to a private school for the relevant school year. *See C.B.*, 635 F.3d at 1159 (citing *Carter*, 510 U.S. at 15). The exercise of this authority proceeds in two steps. First, if a parent unilaterally places a child in a private school as an alternative to the deficient program offered by the state, the parent is entitled to reimbursement if she can establish that (1) the state's offered public placement violates the IDEA, and (2) the private school placement was appropriate. *Id.* Second, if the parent is able to establish both requirements, the deciding court "must then exercise its 'broad discretion' and weigh 'equitable considerations' to determine whether, and how much, reimbursement is necessary." *Id.* (quoting *Carter*, 510 U.S. at 15–16). In making the reimbursement calculus, "courts may consider any relevant factor, including the reasonableness of the private tuition, and the conduct of parents in the IEP formulation process." *Dep't of Educ. v. L.S. by & through C.S.*, 2019 WL 1421752, at *14 (D. Haw. Mar. 29, 2019). In fact, Congress specifically amended the IDEA to place some responsibility on parents by instructing courts to reduce or deny private school tuition if parents behave unreasonably. *See Donahue v. N.Y. City Dep't of Educ.*, 2021 WL 4481344 (S.D.N.Y. Sept 30, 2021); 20 U.S.C. § 1412(a)(10)(c)(iii)(III) (specifically

permitting reduction of private school tuition reimbursement "upon a judicial finding of unreasonableness with respect to actions taken by the parents").

Here, the AHO properly determined that S.K. had established both prongs of the first step. A FAPE was denied because a certain service to which K.P. was entitled was impermissibly conditioned on the "availability" of that service. Decision at 61. Public placement of K.P. would have violated the IDEA. And K.P.'s placement at PAC was proper under the IDEA. *Id.* at 76–78.

The AHO then proceeded to the second step of the analysis, by exercising her "broad discretion" and "weigh[ing] 'equitable considerations'" in order to decide whether and how much to reimburse S.K. for K.P.'s tuition at PAC. *Id.* at 78–82. After explaining in detail how S.K. repeatedly frustrated the DOE's attempts to conduct the IEP formulation process, the AHO found that K.P. was "entitled to have his private placement funded by DOE," but that "a reduction in funding [wa]s warranted because the tuition and fees charged by [PAC we]re excessive and [S.K.] did not diligently and genuinely try to participate in the IEP formulation process." *Id.* at 82.[4] It was within the AHO's "broad discretion" to consider S.K.'s conduct as a factor weighing against full reimbursement. *See L.S.*, 2019 WL 1421752, at *14; *see also Neske v. Porter*, 2022 WL 3290561, at *4 (S.D.N.Y. Aug. 11, 2022) (affirming a denial of tuition reimbursement when

---

[4] PAC tuition is approximately $232,000 per year. Decision at 48 ¶ 138.

11

parents were part of an organized campaign to shift students from one private placement to another and intentionally "thwart the district's process for preparing IEPs for those students").  S.K. does not dispute HIDOE's event chronology, including its description and characterization of her conduct and, indeed, S.K. opted not to reply at all to Defendants' Answering brief.  Nor has S.K. provided any relevant legal authority for her contention that the AHO was required to ground her award reduction decision by showing a nexus between S.K.'s actions and the denial of FAPE.[5]  As this Court gives deference to the AHO's factual findings, especially when they are thorough, careful, and demonstrate "sensitivity to the complexity of the issues presented," see *J.W.*, 626 F.3d at 438–39 (citation omitted), as they are here, the 25% award reduction is appropriate.

//

//

//

---

[5] S.K. cites only to *Doug C. v. Haw. Dep't of Educ.*, 720 F.3d 1038, 1045 (9th Cir. 2013).  *Doug C.*, however, is inapplicable.  There, the Ninth Circuit determined that whether or not a student received a FAPE could not be premised on the parents' actions.  "An agency cannot blame a parent for its failure to ensure meaningful procedural compliance with the IDEA because the IDEA's protections are designed to benefit the student, not the parent."  That determination is of no consequence here where the AHO found a denial of FAPE that is not contested.  Only in the second-step analysis did the AHO evaluate S.K.'s conduct, an issue to which *Doug C.* does not speak.

## CONCLUSION

The AHO's May 13, 2022 Decision is AFFIRMED.

IT IS SO ORDERED.

DATED: April 13, 2023 at Honolulu, Hawaiʻi.

Derrick K. Watson
Chief United States District Judge

---

*KP, et al v. Department of Education, State of Hawaii, et al*; Civil No. 22-00267 DKW-WRP; **ORDER AFFIRMING THE MAY 13, 2022 DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER**